IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| SANNAH DAUDA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No.: 8:23-cv-00174-GLS ) |
| VALERY JEAN, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

    This Memorandum Opinion resolves multiple motions and a letter related to damages filed by the parties now pending before the Court.  Specifically, this Memorandum Opinion resolves "Plaintiff's Motion for Certification of Damages" ("Certification Motion") and "Defendant's Response to Plaintiff's Motion for Certification of Damages" ("Certification Response").  (ECF Nos. 43, 55).  The Memorandum Opinion also addresses: "Defendant's Motion for Leave to Extend Time to Respond to Plaintiff's Motion for Certification of Damages," as well as "Defendant's Motion for Leave to Conduct Discovery Limited to the Issue of Calculating Damages," and a December 16, 2024 letter filed by the Defendant seeking to "amend the joint appendix [related to the parties' summary judgment motions]."[1]  The Court has also considered Plaintiff's response in opposition.  (ECF Nos. 47, 49, 53).  These matters have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

---

[1] The Court will refer to these motions and letter collectively as "Defendant's Motions," or where necessary it will refer to each motion individually.

For the reasons articulated herein, the Court shall grant in part, deny in part the Certification Motion, and the Court will deny Defendant's Motions.

I. **DISCUSSION**

   A. **Procedural Background**

In this section, the Court cites only to those parts of the procedural record that are necessary to resolve the pending motions.

On January 24, 2023, Plaintiff Sannah Dauda ("Plaintiff") filed a lawsuit against Defendant Valery Jean ("Defendant"), alleging breach of contract, to wit, breach of a promissory note. (ECF No. 1). Defendant filed his Answer to the Complaint. (ECF No. 15). Thereafter, the Court entered a Scheduling Order, ordering that discovery close on August 3, 2023, and requiring the parties to submit a Joint Status Report (JSR) on that date. (ECF No. 16).

Prior to the close of discovery, Plaintiff filed a letter notifying the Court of her intention to file a summary judgment motion. (ECF No. 21). Defendant responded to that letter, arguing that entry of summary judgment in favor of Plaintiff was inappropriate for several reasons. (ECF No. 23). Initially, the Court scheduled a hearing to address Plaintiff's letter, but ultimately cancelled the hearing so that the parties could complete discovery. (ECF Nos. 24, 25).

On August 3, 2023, the parties failed to comply with the Scheduling Order and did not file a JSR. Accordingly, the Court ordered the parties to file a JSR. (ECF No. 26). The parties later filed a "Post Discovery Joint Status Report." (ECF No. 27). In the JSR, Plaintiff represented that "the parties have not completed discovery. Plaintiff intends to move the court to amend the Scheduling Order to allow for completion of discovery." (*Id.*). The JSR also reflected that "Defendant will not oppose Plaintiff's motion to amend the Scheduling Order." (*Id.*). Finally, the JSR further reflected that Plaintiff intended to file a summary judgment motion and that Defendant

intended to oppose such a motion by "filing a motion to dismiss and/or motion for summary judgment." (*Id.*). Neither party ever submitted a motion to modify the Scheduling Order. Thus, discovery officially closed on August 3, 2023.

Approximately thirty days after that JSR was filed, the Court entered an order imposing summary judgment briefing deadlines and outlining a protocol to follow. (ECF No. 28, "Summary Judgment Briefing Order"). That Order made clear that full briefing by the parties was due by December 15, 2023. Equally important, the Order also made clear that the parties had two weeks *beyond* the deadline for Plaintiff's Reply to submit a Joint Appendix containing all of the evidence upon with the parties relied to support or oppose Plaintiff's summary judgment motion. (*Id.*). In sum, on September 28, 2023, the Court gave the parties more than ninety (90) days to submit the evidence upon which they relied related to the summary judgment briefing.

Between October 30, 2023 and December 15, 2023, the parties did not comply with the Summary Judgment Briefing Order. (ECF Nos. 29-31). Even though no party requested an extension of time to brief the issues, the Court exercised its discretion and gave Plaintiff and Defendant until January 31, 2024 to file briefing that complied with the Order. (ECF No. 32).

On January 31, 2024, the summary judgment motion, opposition, and reply were filed, as was the Joint Appendix. (ECF Nos. 33, 34, 38). Thus, as a practical matter, the parties were given thirty days more than what was originally ordered to ensure that the Joint Appendix contained all of the facts to support their respective positions. In total, then, from September 28, 2023 until January 31, 2024, the parties had approximately 120 days to compile their summary judgment Joint Appendix. During this time frame, neither Defendant nor Plaintiff ever sought an extension of time by which to submit the Joint Appendix.

On August 30, 2024, the Court issued its Memorandum Opinion, in which the Court found Defendant liable for breaching the promissory note ("Note") by failing to pay Plaintiff the principal sum due, plus interest, by the May 2023 deadline. (ECF No. 41, "Memorandum Opinion," pp. 9-15). Specifically, the Court found that: (a) Defendant executed the Note; (b) Defendant failed to put forth facts showing inadequate consideration provided to make the Note unenforceable; (c) the Note was a valid, enforceable contract that Defendant admitted entering into; (d) Plaintiff provided proof of $100,000 being transferred from her to the Defendant, and Defendant failed to provide any admissible evidence to support his contention that Plaintiff failed to pay him $100,000; (e) Defendant failed to provide admissible evidence in support of his arguments that additional agreements or separate agreements existed that were relevant to whether he owed Plaintiff $100,000; and (f) Defendant admitted that he failed to timely make the first interest payment and that "therefore the entire amount plus interest due under the note is now due and payable." (*Id.*; *see also* ECF No. 11, Answer).

In sum, even after construing the facts in the light most favorable to the Defendant, the non-moving party, the only reasonable inference was that Plaintiff paid the Defendant the $100,000, Defendant was obligated to repay the money (plus interest), and the Defendant failed to repay the $100,000 called for by the Note. (*Id.*). Accordingly, the Court held that Defendant was liable to Plaintiff, and owed damages to Plaintiff in the amount of $100,000, plus interest (to be calculated by Plaintiff based on a formula to convert a usurious interest rate to a rate that was consistent with the law in Maryland). (Memorandum Opinion, pp. 15-20). Put another way, the only amounts left to be determined were the amount of interest due and owing and the amount of the attorney's fees and costs recoverable per the terms of the Note. (Memorandum Opinion, pp. 18-19). Thus, the Court directed Plaintiff's counsel to submit a motion for certification of damages

for the amount of interest and the amount of attorney's fees and costs to be awarded.  (*Id.*; *see also* ECF No. 42).

On September 13, 2024, Plaintiff timely filed the Certification Motion, which meant that the Defendant's opposition, if any, was due on September 27, 2024.  (ECF No. 43).  Defendant failed to timely respond to the Certification Motion and another ten days elapsed before the Court exercised its discretion and extended the deadline by which Defendant could file an opposition to October 31, 2024.  (ECF No. 46).

On October 31, 2024, Defendant filed two motions, ECF Nos. 47 and 49.  These motions are further discussed below in Section I.B.1.

On December 16, 2024, without leave of Court, Defendant filed a letter, ECF No. 54.  This letter is discussed more fully below in Section I.B.2.

Finally, on December 19, 2024, almost ninety days after Defendant's response to the Certification Motion was due, Defendant also filed "Defendant's Response to Plaintiff's Motion for Certification of Damages."  (ECF No. 55).  That response is also discussed more fully below in Section I.C.

### B. Defendant's Motions

1. *Defendant's Motion for Leave to Extend Time to Respond to Plaintiff's Motion for Certification of Damages and Defendant's Motion for Leave to Conduct Discovery Limited to the Issue of Calculating Damages*

Although captioned differently, in both motions Defendant sought an extension of time to respond to the Certification Motion.  (ECF No. 47, "First Motion;" ECF No. 49, "Second Motion").  In support of his requests, Defendant argues that in 2023 a bank closed two of his accounts, which meant that he could not "demonstrate payments he made to the Plaintiff, which is crucial to calculating damages in this matter."  Defendant next asserts that "On October 26, 2024, Defendant

obtained documentation from [the bank] that is material and significant to calculating damages in this matter," and that on October 31, 2024, counsel obtained the information. (First Motion, ¶¶ 2-5; Second Motion, ¶¶ 3-6). Defendant then asks the Court "to permit the Defendant to supplement his discovery disclosures permitted under Fed. R. Civ. P. 26(e)(1)(b)." (First Motion, ¶ 10; Second Motion, ¶ 9). In the Second Motion, Defendant asks for time to conduct discovery "that is limited to the issue of calculating damages," and maintains that the bank documentation will establish the monies that he has paid to Plaintiff. (Second Motion, p. 2).

        a. <u>No Excusable Neglect for Late Filing of the First Motion and Second Motion</u>

On October 31, 2024, Defendant filed the First Motion and Second Motion. These motions were untimely filed; indeed, the Court's order made clear that any response from the Defendant was due 14 days after the filing of the Certification Motion, which was by September 27, 2024. *See* ECF No. 42. Neither motion sought leave of court to be late filed. (*See* ECF Nos. 47, 49).

As a preliminary matter, Defendant failed to ask the Court to accept its late filing of the First Motion and Second Motion pursuant to Fed. R. Civ. P. 6(b). Rule 6(b) provides that the Court "may, for good cause, extend the time" for a motion to be filed upon receipt of a motion from a party "made after the time has expired," only if the party failed to timely file the motion because of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). A court can exercise its discretion and accept the late filing due to "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). The Supreme Court has held that, when deciding whether to accept the late filing, a lower court should consider four factors: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and

whether the movant acted in good faith." 507 U.S. at 395.  Here, Defendant claims that he obtained documentation from the bank on October 26, 2024.  However, he fails to provide any evidence as to when he made efforts to obtain documentation from the bank, nor does he provide any evidence that there was a delay in getting the records due to circumstances beyond his control.  Next, summary judgment was granted in favor of Plaintiff more than 60 days before Defendant late filed the First Motion and Second Motion.  Thus, accepting the late filing would significantly impact the judicial proceedings.  In sum, on this record, the Court cannot find that Defendant's failure to timely file a response to the Certification Motion was due to "excusable neglect."  On this basis alone, the Court could deny ECF Nos. 47 and 49.

### b. Lack of Evidence to Support Motions and Lack of Due Diligence

Even putting the procedural errors aside, the Court will deny the First Motion and Second Motion for other substantive reasons.  First, the Court finds that there is no evidence (e.g., affidavit or declaration or bank records) attached to the First Motion or to the Second Motion in support of the representations made therein.  Thus, the Court has no facts before it that demonstrate the efforts that Defendant made to obtain the bank records.

Second, the Court finds that at no point during discovery (2023) did Defendant raise any issues related to his bank account information, nor did he ask for an extension of the Scheduling Order to allow him time to obtain such records.  Relatedly, there is no evidence before the Court that Defendant tried to subpoena the records from the bank during discovery, yet the bank failed to comply with the subpoena.

The Court next finds that at no point during the 120 days between September 28, 2023 until January 31, 2024 (deadline for submitting the Joint Appendix) did Defendant ever raise the issue related to the bank accounts, nor did Defendant seek an extension of time to file an opposition to

7

the summary judgment motion or to file the Joint Appendix to allow for inclusion of this information. Indeed, pursuant to Fed. R. Civ. P. 56(d), the Defendant could have filed an affidavit or declaration in which he alleged that "for specified reasons, [he could not ] present facts essential to justify [his] opposition," and that the information in the bank records created a genuine issue of material fact. *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244-45 (4th Cir. 2002). In that case, the Court could have deferred its consideration of the summary judgment motion or denied it, or granted a request from the Defendant to take additional discovery. *See* Fed. R. Civ. P. 56(d)(1), (d)(2).

Moreover, the Court finds that at no point between January 31, 2024 and August 30, 2024 (the date that the Memorandum Opinion and Order were issued) did Defendant ever raise the issue related to the bank accounts. The Court further finds that at no point between August 30, 2024 and September 27, 2024, did the Defendant ever raise the issue related to the bank records. Indeed, it was only after Defendant failed to timely to respond to the Certification Motion--and he was given another thirty days to respond--did the Defendant first raise the issue of bank records.

Furthermore, the Court finds that discovery closed on August 3, 2023. Thus, Defendant's October 31, 2024 request to supplement Rule 26(e)(1) disclosures 455 days later is untimely. Defendant has failed to supply any caselaw to support his argument that the Court should grant leave to supplement a disclosure after discovery has closed and an interlocutory order has been entered resolving summary judgment motions.

In sum, the Court denies Defendant's untimely motions.

  2. *Defendant's December 16, 2024 Letter*

On December 16, 2024, without leave of Court, Defendant filed a letter ("the Letter"). (ECF No. 54). In the Letter, Defendant first asks for leave to file a "motion to amend the joint

appendix (sic)." Defendant asserts that he "wants the joint appendix to include a certified transcript" of a trial that occurred in the Circuit Court for Prince George's County in July 2024, and "Defendant's newly obtained bank documents." (Letter, p. 1). The Letter then attempts to explain what allegedly transpired at the 2024 trial, and that "Defendant wants the joint appendix to reflect that part of the amount that Plaintiff claims she is due has already been adjudicated in a separate case." (*Id.*). Regarding the bank records, counsel says that "the Defendant gained access to crucial bank statements just when it appeared this case was coming to final resolution." (*Id.*).

As a procedural matter, the Letter was filed almost ninety days after Defendant's response to the Certification Motion was due. Thus, for the reasons found by the Court above in Section I.B.1.a, the Defendant has failed to establish excusable neglect for his late filing. Accordingly, the Court denies the request to "amend the joint appendix."

Even if the Court were to ignore the procedural errors, the Court would still deny the request to supplement the record. First, Defendant has failed to provide any caselaw to support his argument that he can, almost 120 days after summary judgment was entered, obtain leave to alter or "amend" the evidentiary record that was actually before the Court before it issued its opinion. On this basis, the Court also denies the request to "amend the joint appendix."

More important, as a practical matter, the Letter can most logically be construed as a veiled attempt to ask the Court to reconsider its summary judgment ruling that Defendant, having been found liable, failed to pay Plaintiff the $100,000 owed pursuant to the Note. *See* Letter, pp. 1-2. As such, the Letter is really a motion for reconsideration of the summary judgment ruling.

An order granting summary judgment that resolves liability but not all damages owed is an interlocutory order. Fed. R. Civ. P. 54(b) governs a motion for reconsideration of an interlocutory order. *Bethany Boardwalk Grp., LLC v. Everest Sec. Ins. Co.*, Civ. No. ELH-18-3918, 2020 WL

7054760, at *6 (D. Md. Dec. 2, 2020), *aff'd*, No. 20-2319, 2022 WL 12324609 (4th Cir. Oct. 21, 2022)(interlocutory order is one "that adjudicates fewer than all of the claims or rights and liabilities of fewer than all the parties. . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). Here, the Memorandum Opinion and Order resolved the issue of liability and of the damages owed, except for those related to interest and the amount of attorney's fees and costs. Thus, the Order was an interlocutory order.

In this District, the Local Rules limit a court's ability to entertain a motion for reconsideration. Specifically, in the context of a Rule 54(b) order, "any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order." *See* Local Rule 105.10 (D. Md. 2023); *see also Bethany, supra*, 2020 WL 7054760, at *7 (citing cases from this District). In the instant case, the Court issued its Memorandum Opinion and Order on August 30, 2024. Thus, any challenge to its rulings was due by no later than September 14, 2024. Defendant failed to timely file a reconsideration motion. In fact, Defendant also failed to timely respond to the Certification Motion. Indeed, it was only after the Court, *sua sponte*, granted Defendant leave to respond to the Certification Motion did the Defendant finally file the First Motion and Second Motion. On this procedural record, the Court denies the reconsideration requests in the Letter.

Yet, even putting these procedural errors aside, in this Circuit, it is true that the resolution of a motion to reconsider an interlocutory order is "committed to the sound discretion of the [lower] court," *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003), whose goal is "to reach the correct judgment under law." *Deitemyer v. Ryback*, Civ. No. ELH-18-2002, 2019 WL 4393073, at *1 (D. Md. Sept. 12, 2019)(quoting *Netscape Commc'n Corp v. ValueClick, Inc.*, 704 F.Supp. 2d 544, 547 (E.D. Va. 2010)(internal citations omitted)).

That being said, the Fourth Circuit also makes clear that a court's discretion under Rule 54(b) is not "limitless," and that appellate court has "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case."[2] *U.S. Tobacco Coop., Inc. v. Big South Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018). According to the Fourth Circuit, this is because a court's discretion to revisit earlier rulings in the same case is also subject "to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Tobacco Corp*, *supra*, at 257 (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2nd Cir. 2003)(internal quotation marks omitted)); *see also Sejman*, 845 F.3d at 68 (citation omitted)(law of the case doctrine is a "prudent judicial response to the public policy favoring an end to litigation")).

Putting all of these legal concepts together, then, the Court understands the law to be that a court can revise an interlocutory order "in the same circumstances in which [a court] may depart from the law of the case, [namely]: (1) a subsequent trial proceeding producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson. v. Bos. Sci. Corp*, 856 F.3d 320, 325 (4th Cir. 2017) (internal quotation marks and alteration omitted).

Regarding the first basis--to "account for potentially different evidence discovered during litigation"--the Fourth Circuit "has consistently affirmed denials of motions to reconsider summary judgment rulings where the motion is merely a vessel for the very evidence that was initially

---

[2] According to the Supreme Court, the "law of the case doctrine" provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 557 U.S. 237, 244-45 (2016)(quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011); *see also Carlson v. Bos. Sci. Corp*, 856 F.3d 320, 325 (4th Cir. 2017)(same). The goal behind this doctrine is to promote the interests of finality and judicial economy. *Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988); *see also Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)(law of the case doctrine precludes a party from reviving issues that were previously decided).

11

lacking in opposition to summary judgment." *Carlson*, *supra*, 856 F.3d at 326.  In the instant case, the Court finds that the Letter purports to offer different evidence discovered *not* during litigation (e.g., while discovery was open), but purports to offer evidence that was "discovered" at some unspecified time.  In short, Defendant has not satisfied the first basis for reconsideration.

Regarding the second basis for reconsideration, the Defendant has not alleged that there has been a change in applicable law.  Thus, the second basis for reconsideration is inapplicable to this case.

Regarding the third basis for reconsideration of a court's interlocutory order, the Fourth Circuit has held that it is difficult to meet the high bar of establishing clear error causing manifest injustice.  Specifically, the Fourth Circuit has held:

> As we have noted on more than one occasion, "[a] prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong."

*U.S. Tobacco Coop.*, *supra*, 899 F.3d at 258 (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009))(alterations in *U.S. Tobacco Coop.*).  Put another way, a party cannot use a motion for reconsideration "to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request." *Lynn v. Monarch Recovery*, 953 F. Supp. 2d. 612, 620 (D. Md. 2013)(further citation omitted); *see also Sanders v. Prince George's Public School System*, Civ. No. RWT-08-501, 2011 WL 4443441, at *1 (D. Md. Sept. 21, 2011)(reconsideration motion "not a proper place to re-litigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request").

The Letter does not establish that the Court erred.  Instead, Defendant disagrees with the Court's rulings.  In Defendant's view, the Court should evaluate litigation that occurred in the

Circuit Court in Prince George's County that he believes support his position. Relatedly, the Defendant believes that the Court should evaluate bank records that he failed to timely acquire. Against this backdrop, it is important to recall that, in the Answer, Defendant, admitted to: (a) signing the promissory note promising to pay Plaintiff; and (b) he failed to make the interest payment due and "therefore the entire amount plus interest due under the note is now due and payable." (ECF No. 11, ¶¶ 5, 6).

On this record, then, Defendant has failed to persuade the Court that he has met the high bar of establishing error; he fails to establish that the Court was "dead wrong" in a way that stinks like "a five-week-old, unrefrigerated dead fish." *U.S. Tobacco Coop.*, *supra*, 899 F.3d at 258.

In sum, the requests in the Letter are denied.

### C. Certification Motion: Interest Owed and Attorney's Fees Sought

In the Certification Motion, Plaintiff seeks interest computed at 8% per annum for the period of May 4, 2022 until May 3, 2024, with $500.00 deducted from the total amount, as required by the Order. (Certification Motion, pp. 1-2). In addition, Plaintiffs seeks attorney's fees in the amount of $12,360, and costs in the amount of $547.00. (*Id.*). In support of the Certification Motion, counsel submits: (a) a memorandum in support thereto; (b) a declaration; and (c) Exhibit A, his billing record for this case. (ECF Nos. 43-1 through 43-3).

As held earlier, the Defendant filed his response to the Certification Motion on December 19, 2024. (ECF No. 55, "Response"). The Court first finds that the Defendant failed to attach any evidence to the Response to support his representations. (*Id.*). Instead, Defendant relied upon the factually unsubstantiated representations made in the Letter. (*Id.*). Defendant challenged the interest computation, alleging that "twice the legal maximum rate of interest" had been "applied," and he encouraged the Court to "find interest on the promissory notes was repaid in full." (*Id.*, p.

2). Regarding the attorney's fees and costs request, Defendant "does not dispute that the Plaintiff incurred the attorney (sic) fees and costs listed in the [Certification Motion]," but asks the Court to not impose a fee award and costs because "Plaintiff received the return of her principal plus interest beyond the legal maximum rate." (*Id.*, p. 3).

### 1. Principal on the Note

As held in the Memorandum Opinion, (ECF No. 41, pp. 15-20), and herein, the Court has already found that Defendant must pay the amount of unpaid principal due and owing in the amount of $100,000.[3]

### 2. Interest

The Court previously analyzed the terms of the Note related to the computation of interest. (Memorandum Opinion, pp. 15-18). Reviewing the Joint Appendix (i.e., ECF No. 38, JA 001) and the Certification Motion, the Court first finds that an award to Plaintiff for interest at the rate of 8% for one year, computed from June 2022 to June 2023, is reasonable and not usurious. *See S100, Inc. v. Odili*, Civ. No. TDC-22-0411, 2022 WL 5247569 at *7 (D. Md. Oct. 6, 2022). Next, as held previously, a deduction of $500.00 is required. *S100, Inc.*, 2022 WL 5247569 at *7. In sum, the Court awards interest in the amount of $7,500.

### 3. Attorney's Fees

Plaintiff's counsel requests attorney's fees in the amount of $12,360, predicated on an hourly billing rate of $300.00, and a total of 41.20 hours of billed time. (ECF No. 43-3).

The Note provides that: "[i]f any payment obligation under this Note is not paid when due, the [Defendant] promises to pay all costs of collection, including reasonable attorney fees, whether a lawsuit is commenced as part of the collection process." (ECF No. 38, J.A. 001)

---

[3] If Defendant has already satisfied this portion of the judgment, there is nothing to preclude him from providing Plaintiff with proof of the same.

While a contract provision providing for the award of attorney's fees to the prevailing party is valid and enforceable in Maryland, courts must examine fee award requests for "reasonableness." *Myers v. Kahoe*, 391 Md. 188, 207, 892 A.2d 520, 532 (2006); *see also SunTrust Bank v. Goldman*, 201 Md. App. 390, 401, 29 A.3d 724, 730 (2011)("Current law allows a court to grant only those attorney's fees it finds reasonable."); *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton*, 416 Md. 325, 333, 7 A.3d 1, 5 (2010).

To determine the reasonableness of requested attorney's fees, the Court takes guidance from the "Lodestar" method of determining "the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Knightsbridge, LLC v. DKW Commc'ns, Inc.*, Civ. No. PX 19-381, 2021 WL 593527, at *1 (D. Md. Feb. 16, 2021)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

An analysis of the fee "customarily charged in the locality for similar legal services" requires a court to consider the "community in which the court sits [as] the first place [to evaluate] prevailing market rate." *Thompson v. U.S. Dep't of Hous. & Urban Dev.,* Civ. No. MGJ-95-309, 2002 WL 31777631, at *12 (D. Md. Nov. 21, 2002)(quoting *Montcalm. Pub. Corp. v. Commonwealth of Va.,* 199 F.3d 168, 173 (4th Cir. 1999)). Thus, the relevant market is Maryland, where this court sits. *See Costar Grp., Inc. v. Loopnet, Inc.,* 106 F.Supp.2d 789, 788 (D. Md. 2000). In this district, that knowledge of the prevailing market rate "is embedded within [the Local Rules of the District of Maryland]." *Manning v. Mercatanti*, Civ. Nos. ELH-11-2964, ELH-12-0195, 2014 WL 1418322, at *5 (D. Md. Apr. 10, 2014) (*quoting Gonzales v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011)). Appendix B to the Local Rules (D. Md. 2023), while not binding, presumptively set forth ranges of reasonable hourly rates based on an attorney's years of experience. *Gonzales*, *supra*, 2011 WL 3886979, at *2.

15

Furthermore, when calculating fee awards under contractual fee-shifting provisions, courts "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")] as the foundation for analysis of what constitutes a reasonable fee." *Monmouth Meadows*, 416 Md. at 336-37, 7 A.3d at 8. MRPC 1.5(a) identifies eight factors for a court to consider:

1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

3) the fee customarily charged in the locality for similar legal services;

4) the amount involved and the results obtained;

5) the time limitations imposed by the client or by the circumstances;

6) the nature and length of the professional relationship with the client;

7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8) whether the fee is fixed or contingent.

A court does not need to evaluate each factor separately, nor does it need to "make explicit findings with respect to Rule 1.5," as long as the court "utilizes the rule as its guiding principle" for deciding reasonableness. *Monmouth Meadows*, 416 Md. at 340 n.13, 7 A.3d at 10 n. 13. In addition, a court may consider any other factor "reasonably related to a fair award of attorney's fees." *Id.*, at 337-38.

The Defendant does not dispute that the hourly rate charged by counsel is unreasonable, nor does he dispute the number of hours expended by counsel. (Response, p. 3). Regardless,

16

determination of the facts supporting reasonableness lies within the sound discretion of the Court. *Myers*, 391 Md. at 207, 892 A.2d at 532. Thus, a court should try to reach a practical and reasonable result.

Upon reviewing the billing statement provided by Plaintiff's counsel, some of the entries are generic or "vague," which impedes the Court's ability to assess whether the fees sought are reasonable. (ECF No. 43-3, pp. 1-3). Thus, evaluating all of the *Monmouth Meadows* factors, and upon further consideration of the declaration and documentation submitted in support of the Certification Motion, the Court exercises its discretion and finds that a reduction in the amount of $2,000 is appropriate. Accordingly, the Court orders Defendant to pay attorney's fees in the amount of $10,360.

      4. *Costs*

Federal law and the Guidelines for Bills of Costs – United States District Court for the District of Maryland (D. Md. 2022)("hereinafter Bills of Costs Guidelines") provide for certain reimbursable expenses. *See* 28 U.S.C. § 1920; Bills of Costs Guidelines.

To substantiate the costs, Plaintiff submitted a declaration and description of expenses. Here, Plaintiff seeks reimbursement for the filing fee and the private process server's fees. (ECF Nos. 43-2; 43-3, p. 3). The Court finds that these are the types of costs that have been charged to defendants, that they are compensable under the Bills of Costs Guidelines, and that the amount sought is reasonable. *See* Bills of Costs Guidelines, Taxable Costs, Sections II. B.a., II. C.b.; 28 U.S.C. § 1920(1); *see also Wyne v. Medo Indus., Inc.*, 329 F. Supp. 2d 584, 590 (D. Md. 2004) ("[F]ees associated with private process servers are taxable costs . . . ."). Accordingly, the Court orders Defendant to pay $547.00 in costs.

## II. CONCLUSION

For the foregoing reasons, the motion for certification of damages is **GRANTED IN PART, DENIED IN PART**. Defendant's motions are **DENIED**.

Separate Orders will follow.


Dated: March 28, 2025                                              /s/
                                                          The Honorable Gina L. Simms
                                                          United States Magistrate Judge